1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9    JERRY L. GRENIER,

10          Plaintiff,                          NO. 2:12-cv-0258 KJM GGH PS

11       vs.

12   WENDY SPENCER,

13          Defendant.                          ORDER
     _____/

14

15          Presently before the court is defendant's motion to dismiss, filed August 17,

16   2012,[1] to which plaintiff has filed an opposition.  Also before the court is plaintiff's motion to

17   amend the amended complaint, filed June 22, 2012.

18   BACKGROUND

19          Plaintiff filed this action on January 31, 2012.  The second amended complaint

20   ("SAC") is presently before the court.  It alleges that plaintiff was a Caucasian male with a

21   service connected disability who was 54 years old at the time he was terminated from his

22   employment.  (SAC at ¶ 135.)  The SAC alleges that plaintiff's former employer, the Corporation

23   for National and Community Service ("CNCS"), discriminated against him, created a hostile

24   work environment, retaliated against him, and exacerbated his service connected disability during

25   _____

26        [1]  The motion was submitted on the record without a hearing by order of September 19,
     2012.

1

his employment there which began in June, 2002, until plaintiff's termination on June 1, 2006. (SAC at ¶ 177.)  Defendant Wendy Spencer is Chief Executive Officer of CNCS.  Claims are for violation of the Age Discrimination in Employment Act (29 U.S.C. § 621, et seq.), Title VII of the Civil Rights Act (42 U.S.C. § 2000e et seq.), the Rehabilitation Act (29 U.S.C. § 791 et seq.), "pattern and practice of retaliation for participating and or opposing unlawful discrimination, ADEA, Title VII, Rehabilitation Act" (Claim Four), and violation of civil service retention rights (5 U.S.C. § 8151).  Plaintiff seeks monetary damages.

DISCUSSION

I.  PLAINTIFF'S MOTION TO AMEND

As defendant filed an amended motion to dismiss to specifically address the second amended complaint filed June 28, 2012, the court construes the amended motion as a waiver of opposition to plaintiff's motion to amend, filed June 22, 2012.  There being no opposition, plaintiff's motion to amend is granted.

II.  DEFENDANT'S MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT

Turning to defendant's motion, it raises numerous grounds for dismissal, including the failure to plead a short and plain statement pursuant to Fed. R. Civ. P. 8(a), failure to state a claim under the ADEA, Title VII, the Rehabilitation Act, and in regard to the Fourth and Fifth claims for relief, and lack of jurisdiction for the Title VII claim based on failure to exhaust administrative remedies.

In the alternative, defendant seeks an order requiring a more definite statement because the claims are so disorganized, confusing and unintelligible that defendant is unable to respond.

A.  LEGAL STANDARDS

Rule 12(b)(1) - Subject Matter Jurisdiction

On a Rule12(b)(1) motion to dismiss for lack of subject matter jurisdiction, plaintiff bears the burden of proof that jurisdiction exists.  See, e.g., Sopcak v. Northern

1  Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir.1995); Thornhill Pub. Co. v. General Tel.

2  & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979).  Different standards apply to a 12(b)(1)

3  motion, depending on the manner in which it is made.  See, e.g., Crisp v. U.S., 966 F. Supp. 970,

4  971-72 (E.D. Cal. 1997).

5         First, if the motion attacks the complaint on its face, often referred to as a "facial

6  attack," the court considers the complaint's allegations to be true, and plaintiff enjoys

7  "safeguards akin to those applied when a Rule 12(b)(6) motion is made." Doe v. Schachter, 804

8  F. Supp. 53, 56 (N.D. Cal. 1992).  Presuming its factual allegations to be true, the complaint

9  must demonstrate that the court has either diversity jurisdiction or federal question jurisdiction.

10  For diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiff and defendant must be residents

11  of different states.  For federal question jurisdiction pursuant to 28 U.S.C. § 1331, the complaint

12  must either (1) arise under a federal law or the United States Constitution, (2) allege a "case or

13  controversy" within the meaning of Article III, § 2, or (3) be authorized by a jurisdiction statute.

14  Baker v. Carr, 369 U.S. 186, 198, 82 S. Ct. 691, 699-700, 7 L. Ed. 2d 663 (1962).

15         Second, if the motion makes a "factual attack" on subject matter jurisdiction,

16  often referred to as a "speaking motion," the court does not presume the factual allegations of the

17  complaint to be true.  Thornhill, 594 F.2d at 733.  In a factual attack, defendant challenges the

18  truth of the jurisdictional facts underlying the complaint.  "Faced with a factual attack on subject

19  matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6). . . . No

20  presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material

21  facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

22  claims." Id. (quotations and citation omitted).  The court may hear evidence such as declarations

23  or testimony to resolve factual disputes. Id.; McCarthy v. United States, 850 F.2d 558, 560 (9th

24  Cir. 1988).[2]

25  _____

26      [2] If the jurisdictional issue is intertwined with the merits of the case, the trial court cannot
determine the jurisdictional issue until such facts are appropriately resolved.  See Roberts v.

1  Rule 12(b)(6) - Failure to State a Claim

2          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

3  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

4  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

5  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

6  plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see

7  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "To survive a motion to dismiss,

8  a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

9  is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v.

10  Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

11  factual content that allows the court to draw the reasonable inference that the defendant is liable

12  for the misconduct alleged." Id.

13          In considering a motion to dismiss for failure to state a claim, the court accepts all

14  of the facts alleged in the complaint as true and construes them in the light most favorable to the

15  plaintiff.  Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not,

16  however, required to accept as true conclusory allegations that are contradicted by documents

17  referred to in the complaint, and [the court does] not necessarily assume the truth of legal

18  conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at

19  1071.  The court must construe a pro se pleading liberally to determine if it states a claim and,

20  prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity

21  to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v.

22  Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police

23  Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed,

24

25  Corrothers, 812 F.2d 1173, 1177-78 (9th Cir.1987); see also Trentacosta v. Frontier Pac. Aircraft
    Indus., 8l3 F.2d 1553, 1558 (9th Cir. 1987) (summary judgment standard applied if motion
26  determines facts where jurisdictional issue and merits are intertwined).

1   particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342

2   & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when

3   evaluating them under the standard announced in Iqbal).

4          In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may

5   generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

6   and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of

7   Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although

8   the court may not consider a memorandum in opposition to a defendant's motion to dismiss to

9   determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections,

10  151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers

11  in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2

12  (9th Cir. 2003).

13      B.  ANALYSIS

14          1.  Rule 8(a)

15          The difficulty in unraveling plaintiff's allegations arises from plaintiff's having

16  failed to provide, as required by Fed. R. Civ. P. 8(a)(2), "a short and plain statement of the claim

17  showing that the pleader is entitled to relief . . .."

18          Fed. R. Civ. P 8 sets forth general rules of pleading in the federal courts.

19  Complaints are required to set a forth (1) the grounds upon which the court's jurisdiction rests,

20  (2) a short and plain statement of the claim showing entitlement to relief; and (3) a demand for

21  the relief plaintiff seeks.  Although the Federal Rules adopt a flexible pleading policy, a

22  complaint must give fair notice and state the elements of the claim plainly and succinctly.  Jones

23  v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must allege with at

24  least some degree of particularity overt acts which defendants engaged in that support plaintiff's

25  claim.  Id.  The complaint's allegations are not sufficient to put defendant fairly on notice of its

26  alleged misconduct.  See Richmond v. Nationwide Cassel L.P., 52 F.3d 640, 645 (7th Cir. 1995)

5

1  (amended complaint with vague and scanty allegations fails to satisfy the notice requirement of

2  Rule 8); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202 (2d ed. 1990).

3          Here, the SAC contains 323 paragraphs in 63 pages, which do not constitute a

4  short and plain statement.   The allegations are for the most part out of chronological order.   For

5  example, plaintiff has included factual allegations both separately (¶¶ 6-22), and within each

6  claim for relief.   The first claim, for age discrimination, contains 42 paragraphs, which are

7  subdivided into smaller sections, each with their own internal chronological order, separate from

8  the other sections and the introductory factual allegations.   (SAC ¶¶ 22-66.)   The second claim,

9  for Title VII violations, is not in any chronological order.   (Id. at ¶¶ 67-160.)

10         The fourth claim contains its own set of problems, as its heading references most

11  of the other separately enumerated claims but the allegations provide facts which do not lend

12  themselves to any claim for relief.   For example, the SAC alleges "[t]he Plaintiff's service

13  connected disability was further exacerbated after Mr. Caudle sent a broadcast email to the staff

14  praising and supporting Mr. Eaglin's class, knowing the Plaintiff was libeled by Mr. Eaglin and

15  offended by his class."   (Id. at ¶ 210.)

16         As pointed out by defendant, there are many allegations which do not appear to

17  concern plaintiff at all, but relate to other CNCS employees.   (Id. at ¶¶ 7-22.)   By way of

18  example, plaintiff alleges:

19         The Director of the Projects and Training Department, Ms.
           Morioka-Estrada was the de-facto Pacific Region Director.   Mr.
20         Caudle protected and authorized Ms. Morioka-Estrada to direct the
           entire staff which resulted in a convoluted chain of command and
21         an adversarial relationship between her, and the plaintiff's two
           supervisors, Mr. Statz and Mr. Dougherty.
22  (Id. at ¶ 8.)

23         Such allegations are not relevant to claims plaintiff is attempting to allege for

24  violations against himself.   This is not to say that plaintiff should eliminate on amendment those

25  facts pertaining to other employees where plaintiff spoke out against the violations and suffered

26  an adverse consequence as a result.

1    Other allegations concern actions which took place long after plaintiff left this

2    employment.  For example, plaintiff relates that Regional Director Caudle was demoted in July,

3    2006, and forced to resign in November, 2007.  (Id. at ¶¶ 13, 16.)  He was replaced by Mr.

4    Phipps, who was put on a performance improvement plan in November, 2008.  (Id. at ¶ 18.)  Ms.

5    Mazyck was demoted and asked to resign in November, 2008, and then she left the agency in

6    March, 2009.  (Id. at ¶¶ 19, 21.)  All of these actions took place after plaintiff was terminated in

7    June, 2006.

8    By virtue of its length alone, the 63 page second amended complaint does not

9    contain a short and plain statement of the claims showing entitlement to relief as required by Fed.

10   R. Civ. P. 8(a)(2).  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).  There, the Ninth

11   Circuit Court of Appeal upheld the dismissal of a complaint it found to be "argumentative,

12   prolix, replete with redundancy, and largely irrelevant.  It consists largely of immaterial

13   background information."  It observed that the Federal Rules require that a complaint consist of

14   "simple, concise, and direct" averments.  Id.  The court does not have the resources necessary to

15   decipher such a long document as presented by plaintiff.  Although the Federal Rules adopt a

16   flexible pleading policy, a complaint must give fair notice and state the elements of the claim

17   plainly and succinctly.  Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).

18   Although plaintiff must allege with at least some degree of particularity overt acts which

19   defendants engaged in that support plaintiff's claim, there need not be, and should not be,

20   excruciating detail.  Id.  Plaintiff must attempt to winnow down those claims for which a good

21   faith basis in fact and the law exist.  Because plaintiff has failed to comply with the requirements

22   of Fed. R. Civ. P. 8(a)(2), the second amended complaint must be dismissed.  The court will,

23   however, grant plaintiff one last opportunity to file a third amended complaint.  Accordingly, any

24   amended complaint shall set forth the facts in chronological order, and **not exceed thirty pages**.

25   \\\\\\

26   \\\\\\

1     2. <u>ADEA (Claim One)</u>

2     Plaintiff alleges that he was subject to disparate and hostile treatment because of

3 his age and status as a male military veteran.

4     The ADEA makes it unlawful for an employer "to fail or refuse to hire or to

5 discharge any individual or otherwise discriminate against any individual with respect to his

6 compensation, terms, conditions, or privileges of employment, because of such individual's age."

7 29 U.S.C. § 623(a)(1).  These prohibitions apply to "individuals who are at least 40 years of age."

8 29 U.S.C. § 631(a).  <u>See also</u> <u>Coleman v. Quaker Oats Co.</u>, 232 F.3d 1271, 1280 (9th Cir. 2000).

9     A plaintiff alleging discrimination under the ADEA may proceed
      under two theories of liability: disparate treatment or disparate

10     impact.  Proof of disparate treatment requires a showing that the
      employer treats some people less favorably than others because of

11     their age.  In contrast, discriminatory motive or intent need not be
      shown under a disparate impact theory, which challenges facially

12     neutral employment practices which have a discriminatory impact.
      However, under the latter theory the plaintiff must actually prove

13     the discriminatory impact at issue, rather than merely an inference
      of discriminatory impact.

14

15 <u>Rose v. Wells Fargo & Co.</u>, 902 F.2d 1417, 1421 (9th Cir. 1990) (citations omitted).

16     The disparate treatment theory can be based on circumstantial or direct evidence.

17 <u>Sheppard v. David Evans and Assoc.</u>, ___ F.3d ___, 2012 WL 3983909 (9th Cir. Sep. 12, 2012).

18 To prevail on this theory, the <u>McDonnell Douglas</u> framework is applied:

19     [T]he employee must first establish a prima facie case of age
      discrimination. If the employee has justified a presumption of

20     discrimination, the burden shifts to the employer to articulate a
      legitimate, non-discriminatory reason for its adverse employment

21     action. If the employer satisfies its burden, the employee must then
      prove that the reason advanced by the employer constitutes mere

22     pretext for unlawful discrimination.

23 <u>Diaz v. Eagle Produce Ltd. P'ship</u>, 521 F.3d 1201, 1207 (9th Cir. 2008), *quoting* <u>McDonnell</u>

24 <u>Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973).  A prima facie case of

25 discrimination requires plaintiff to allege: (1) he was at least forty years old; (2) he was

26 performing his job satisfactorily; (3) he was discharged; and (4) he was "either replaced by [a]

1   substantially younger [employee] with equal or inferior qualifications or discharged under

2   circumstances otherwise giving rise to an inference of age discrimination." Id. (internal quotation

3   marks omitted).

4        The ADEA claim contains numerous references to the military veteran status of

5   himself and others.  (SAC ¶¶ 24-66.)  Plaintiff appears to use the term military veteran

6   interchangeably with someone who is over forty years of age.  (See e.g. SAC at ¶¶ 27, 29, 32, 33,

7   35, 43, 50.)  For example, there is an allegation that military veterans were replaced with

8   unqualified and untrained employees in their twenties.  (Id. at ¶ 27.)  These terms do not equate,

9   however, and the ADEA only applies to discrimination based on age.  These military veteran

10  references are so extensive throughout the allegations pertaining to the ADEA claim, however,

11  that despite some references to plaintiff's age, (id. at ¶ 27, 32, 62), it is not at all clear that

12  plaintiff is alleging that any adverse employment action was based strictly on plaintiff's age

13  rather than his status as a military veteran.  In fact, defendant correctly notes that plaintiff does

14  not mention his age of 54 until page 27 of the SAC, under the Title VII claim.  (Id. at ¶ 135.)

15       Also irrelevant to an ADEA claim are allegations that plaintiff opposed unlawful

16  workplace practices such as "conspiracy to commit felonies (extortion and embezzlement),"

17  abusing public funds for personal use, or using disparate time accounting based on age.  (Id. at ¶¶

18  54, 56, 61, 62.)  The ADEA provides no remedy for opposing unlawful practices by fellow

19  employees unrelated to discrimination; it only protects against unlawful discrimination based on

20  age.  The ADEA only prohibits retaliation against someone who files a charge "under this

21  chapter" or who opposes "any practice made unlawful by *this section*."  29 U.S.C. § 623(d)

22  (emphasis added).  So, for example, where a plaintiff voices complaints regarding sexually

23  provocative comments, such complaints do not constitute protected activity because they are not

24  connected to the plaintiff's complaints of race discrimination.  Adams v. Home Depot USA, Inc.,

25  2007 WL 4565163, *25 (D. Or. Dec. 19, 2007).

26  \\\\\

1    Furthermore, another scenario which might apply to this set of facts in regard to

2    the retaliation claim under the ADEA is that plaintiff must show that his protected activity was

3    opposing unlawful employment discrimination directed at other employees who are protected by

4    Title VII or the ADEA.  See Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994) (discussed

5    infra in regard to Title VII).  The analysis in this regard is the same for both the ADEA and Title

6    VII.  See O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756, 763 (9th Cir. 1996).

7    Since the ADEA protects only for discipline or other adverse action against

8    plaintiff based on his age, such as where younger employees received more favorable treatment,

9    or where plaintiff opposed age discrimination against other employees, on amendment plaintiff

10   shall limit his allegations to conduct by his former employer that meets these requirements.  See

11   MacKenzie v. City and County of Denver, 414 F.3d 1266, 1277 (10th Cir. 2005).

12   Plaintiff's allegation that he was demoted immediately when he started this job is

13   an example of an adverse employment action; however, plaintiff has not alleged the other

14   elements necessary to state a cause of action such as why his demotion was based on his age, and

15   why this action was different than how similarly situated employees were treated.  See Rivera v.

16   City & County of Denver, 365 F.3d 912, 922 (10th Cir.2004) ("Similarly situated employees are

17   those who deal with the same supervisor and are subject to the same standards governing

18   performance evaluation and discipline.").  Any allegations of occasional teasing, offhand

19   comments, age related jokes or isolated incidents (unless extremely serious), do not create a

20   cause of action for hostile work environment under the ADEA, and should be eliminated from

21   the SAC.  Id. at 1280.

22   On amendment, plaintiff must adequately allege that he was over 40 years of age,

23   that he was qualified for the position for which he was hired (based on his education or past work

24   experience), and that he was demoted and terminated by defendant, as well as any other adverse

25   action plaintiff intends to allege.  Plaintiff must additionally allege facts suggesting that a

26   substantially younger person with similar (or lesser) qualifications was placed in the position

1    from which he was demoted, and replaced him in the position from which he was terminated.

2               3.  Title VII (Claim Two)

3               Defendant moves to dismiss the Title VII claim, asserting that the allegations of

4    retaliation and hostile work environment based on plaintiff's opposition to unethical or unlawful

5    activities, are not protected by Title VII.  To the extent that plaintiff does mention race, defendant

6    argues that these allegations are so confusing and insufficient that they fail to state a claim.

7    Defendant additionally asserts that some of the allegations attempt to assert a tort claim, for

8    which plaintiff's exclusive remedy is the Federal Tort Claims Act.  Furthermore, defendant

9    contends that some of the claims relate to activities that occurred after plaintiff left this

10   employment.

11              Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., makes it an

12   unlawful employment practice for an employer to "fail or refuse to hire or to discharge any

13   individual, or otherwise to discriminate against any individual with respect to his compensation,

14   terms, conditions, or privileges of employment, because of such individual's *race, color,*

15   *religion, sex, or national origin*."  Id., § 2000e-2(a)(1) (emphasis added).  Section 2000e-16

16   makes the substantive provisions of Title VII applicable to federal agencies.  If the employer

17   permits the work environment to be permeated by hostility based on the emphasized protected

18   categories, this hostile work environment itself violates Title VII.  Meritor Savings Bank v.

19   Vinson, 477 U.S. 57, 106 S.Ct. 2399 (1986).

20              A suit for retaliation may be brought under Title VII which provides in part:

21              It shall be an unlawful employment practice for an employer to
                discriminate against any of his employees . . . because he has
22              opposed any practice made an unlawful employment practice by
                this subchapter, or because he has made a charge, testified,
23              assisted, or participated in any manner in an investigation,
                proceeding, or hearing under this subchapter.
24   42 U.S.C. § 2000e-3(a).

25              This section protects an employee or former employee from retaliation as a result

26   of engaging in activity protected by Title VII.  Arnold v. U.S., 816 F.2d 1306, 1310 (9th Cir.

1    1987); <u>Richardson v. Restaurant Marketing Associates, Inc.</u>, 527 F. Supp. 690, 695 (N.D. Cal.

2    1981).  In a retaliation case, this circuit follows the general rule regarding proof as set forth in

3    <u>McDonnell Douglas</u>.[3]  Thus: (1) plaintiff must establish a prima facie case; (2) defendant must

4    then come forward with legitimate nondiscriminatory reasons for the action; and (3) plaintiff has

5    the final burden to show that the action was a pretext for retaliation.  <u>Steiner v. Showboat</u>

6    <u>Operating Co.</u>, 25 F.3d 1459, 1464-65 (9th Cir. 1994).

7         Unless plaintiff can offer direct evidence of an employer's intent to discriminate, a

8    prima facie case requires a showing of his membership in a protected class, adverse treatment,

9    and that this treatment was different from other employees outside the protected class who were

10   similarly situated.[4]  <u>Jauregui v. City of Glendale</u>, 852 F.2d 1128, 1134 (9th Cir. 1988).

11        A hostile environment is one so "'severe or pervasive' as to 'alter the conditions

12   of [the victim's] employment and create an abusive working environment.'"  <u>Faragher v. City of</u>

13   <u>Boca Raton</u>, 524 U.S. 775, 786, 118 S.Ct. 2275, 2283 (1998).  "'[M]ere utterance of an ethnic or

14   racial epithet which engenders offensive feeling in an employee' would not sufficiently alter

15   terms and conditions of employment to violate Title VII)."  <u>Id.</u> at 787 (citation omitted).  "[A]

16

17        [3] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 1824 (1973).

18        [4] A slightly different test was articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S.
     792, 93 S.Ct. 1817 (1973).  In that failure to hire case, the Supreme Court required the plaintiff to

19   show:

20        (i) that he belongs to a racial minority; (ii) that he applied and was
          qualified for a job for which the employer was seeking applicants;
21        (iii) that, despite his qualifications, he was rejected; and (iv) that,
          after his rejection, the position remained open and the employer
22        continued to seek applicants from persons of complainant's
          qualifications.

23   <u>Id.</u> at 1824.  At least one other court has pointed out, and this court agrees, that a strict
     mechanical application of each factor has been proscribed by the Supreme Court, especially

24   where the factor has no bearing on the alleged disparate treatment in the particular case.  <u>Beaven</u>
     <u>v. Com. of Ky.</u>, 783 F.2d 672, 676 (6th Cir. 1986).  <u>See also</u> Wooten v. New York Tel. Co., 485

25   F. Supp. 748, 760 (S.D.N.Y. 1980) (finding that the fourth <u>McDonnell Douglas</u> factor is not
     necessary in a discriminatory discharge case).  This court finds that the fourth <u>McDonnell</u>

26   <u>Douglas</u> factor is not relevant to the case at hand.

1   lack of racial sensitivity does not, alone, amount to actionable harassment." Id.

2          A hostile work environment requires a pattern of persistent harassment severe

3   enough to alter the conditions of employment and create an abusive working environment. Clark

4   County Sch. Dist. v. Breeden, 532 U.S. 268, 270, 121 S.Ct. 1508 (2001).  Generally, this

5   standard demands more than isolated or sporadic incidents of harassment, off-color jokes, sexual

6   horseplay or inappropriate behavior. Candelore v. Clark County Sanitation Dist., 975 F.2d 588,

7   590 (9th Cir.1992); Jordan v. Clark, 847 F.2d 1368, 1374-75 (9th Cir.1988); Benitez v. PGE, 799

8   F.Supp. 1075, 1080-81 (D.Or.1992); Brooks v. City of San Mateo, 229 F.3d 917 (9th Cir. 2000);

9   Kortan v. California Youth Authority, 217 F.3d 1104 (9th Cir.2000).  Although the victim must

10  perceive the environment as abusive, the environment must be one that a reasonable person

11  would find hostile or abusive. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367

12  (1993).

13         Most of the allegations in the second claim are for retaliation against plaintiff

14  because he opposed unethical or unlawful activities by other employees who were favored based

15  on their minority status,[5] that he advocated for enforcement and compliance with the law, and

16  that he was terminated as a result, based on his race and age.[6]  By way of example, the section of

17  Claim Two entitled "unequal protection based on race," pertains to plaintiff's claim that two

18  employees, Ms. Estrada and Ms. Martinez, made "unauthorized commitments" binding the

19  government, and after plaintiff briefed the entire staff about these activities, and admitted to Ms.

20  Estrada that the briefing applied to her, she wrote a letter of complaint to plaintiff's superior who

21  used the letter to justify plaintiff's termination.  (SAC ¶¶ 71-75.)  Plaintiff alleges elsewhere

22  under this claim that he is a Caucasian male, (SAC ¶ 135), and that he suffered adverse treatment

---

[5]  The minorities are referenced in the SAC as Hispanic and Black.  (SAC ¶¶ 94, 96.)

[6]  Title VII applies to discrimination against Caucasians.  McDonald v. Santa Fe Trail Transportation Co., 427 U.S. 273, 282–284, 96 S.Ct. 2574, 2579-2580 (1976) (holding employer violated Title VII by terminating Caucasian employees who misappropriated cargo while retaining African Americans guilty of the same offense).

1  in the form of his termination, among other actions.  Other sections of Claim Two refer to similar

2  scenarios.

3           There are only certain specific scenarios for which plaintiff may state a claim.

4  "In order to make out a prima facie case of discrimination based on opposition to an unlawful

5  employment practice under § 704(a), [plaintiff] must show that (1) he engaged in a statutorily

6  protected activity (i.e., that he protested or otherwise opposed unlawful employment

7  discrimination directed against employees protected by Title VII); (2) subsequently, he was

8  disciplined or lost his job; and (3) a causal link exists between the protected activity and the

9  adverse action."  Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

10          Problematic to this claim is that plaintiff's activity was not protected under Title

11  VII which only protects "oppos[ing] any practice made an unlawful employment practice by this

12  subchapter."  42 U.S.C. § 2000e–3(a).  "A 'protected' activity is formal or informal opposition to

13  unlawful discrimination."  Quinones v. Potter, 661 F. Supp.2d 1105, 1127 n. 13 (D. Ariz. Sep.

14  30, 20009).  Plaintiff's complaints about employees making unauthorized commitments,

15  embezzling, or defrauding the United States government are not activities protected by Title VII

16  discrimination.  See Abbey v. Hawaii Employers Mutual Insurance Co., 760 F.Supp.2d 1005,

17  1025 (D. Hawaii Dec. 21, 2010) (complaints about an independent company review program

18  were not protected because they did not pertain to discrimination); Noga v. Costco Wholesale

19  Corp., 583 F.Supp.2d 1245, 1262 (D. Or. 2008) (general complaints about coworkers did not

20  constitute complaints about discrimination).

21          The fact that an employment practice may be offensive or illegal does not make it

22  discriminatory based on race or gender.  "The opposition clause, by its terms, protects only those

23  employees who oppose what they reasonably perceive as discrimination *under* the Act."  Learned

24  v. City of Bellevue, 860 F.2d 928, 932 (9th Cir.1988) (emphasis in original).  "[T]he opposed

25  conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful

26  retaliation."  Id., *quoting* Silver v. KCA, Inc., 586 F.2d 138, 142 (9th Cir.1978) ("under the clear

1    language of the "opposition" clause of [section] 704(a), a case of retaliation has not been made

2    out unless the "retaliation" relates to the employee's opposition to a [section] 703 violation").[7]

3    As plaintiff's theory for the allegedly adverse employment action, his termination, is limited to

4    retaliation for opposing the aforementioned conduct and not based on discrimination, his

5    retaliation claim must fail.  (SAC ¶¶ 98, 147.)   The retaliation portion of plaintiff's Title VII

6    claim will be dismissed with leave to amend, however, should plaintiff be able to state such a

7    claim.

8          Plaintiff also alleges that a hostile work environment was created based on his

9    opposition to the conduct of his fellow employees, (id. at ¶ 103), which must fail for the same

10   reasons as the retaliation claim.  There is only one section in the Title VII claim which alleges

11   hostile work environment based on race, but it is set forth in the section alleging retaliation, and

12   it alleges that plaintiff opposed "misinformation the fraudulent vendor was teaching."  In this

13   section, plaintiff describes how an outside speaker was hired to "reinforce and teach prejudicial

14   stereotyping of white men to the entire staff and volunteers."  (Id. at ¶¶ 116, 117, 119, 120, 133.)

15   Plaintiff should be permitted amendment as to this hostile work environment claim as limited to

16   race only.  On amendment, if plaintiff proceeds with a claim under Title VII, he should not

17   include any claims concerning his opposition to unethical or unlawful activities, but limit any

18   allegations to claims of race discrimination only.

19          To the extent that plaintiff references tortious acts by others, including

20   "stigmatizing plaintiff's reputation," libel, and negligence, (SAC ¶¶ 114, 124, 130), such torts

21   must be brought under the Federal Tort Claims Act ("FTCA"), which requires that such claims

22

23        [7]  Even if plaintiff could allege that his activity was protected, he does not allege that he
was treated differently from other employees outside the protected class who were similarly
24   situated.  For plaintiff to allege a Title VII claim, he would have to allege that specific
individuals who were not Caucasian males were given preferential treatment.  He would also
25   have to allege that these individuals were similarly situated in terms of their job duties.  For
example, "[e]mployees in supervisory positions are generally deemed not to be similarly situated
26   to lower level employees."  Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir.
2003).

be administratively exhausted.  The FTCA waives the sovereign immunity of the United States

for actions in tort.  The FTCA also provides that before an individual can file an action against

the United States in district court, he must seek an administrative resolution of the claim.  28

U.S.C. § 2675(a) provides, in relevant part,

> An action shall not be instituted upon a claim against the United
> States for money damages for injury or loss of property or personal
> injury or death caused by the negligence or wrongful act or
> omission of any employee of the Government while acting within
> the scope of his office or employment, unless the claimant shall
> have first presented the claim to the appropriate Federal agency and
> his claim shall have been finally denied by the agency in writing
> and sent by certified or registered mail.

Here, plaintiff has not alleged that he submitted an administrative tort claim

before bringing this action.  Furthermore, the United States is the only proper defendant in an

FTCA action.  28 U.S.C. § 1346(b); Lance v. United States, 70 F.3d 1093, 1095 (9th Cir. 1995).

Therefore, on amendment, plaintiff should not allege any tort claims unless he can show he

administratively exhausted them, and names the United States as an additional defendant.

### 4. Rehabilitation Act (Claim Three)

Defendant asserts that plaintiff has failed to state a claim under the Rehabilitation

Act.

Section 501 of the Rehabilitation Act is the exclusive remedy for a federal

employee to bring a disability discrimination claim against his employer.  Boyd v. U.S. Postal

Service, 752 F.2d 410, 413 (9th Cir.1985); see also, Johnson v. U.S. Postal Service, 861 F.2d

1475, 1478 (10th Cir. 1988) ("only section 501 provides a private cause of action for federal

employees bringing an action alleging employment discrimination based on handicap").

"The Rehabilitation Act, like the ADA, proscribes discrimination against a

qualified individual with a disability because of the disability in regard to the terms, conditions,

and privileges of employment."  Niimi-Montalbo v. White, 243 F.Supp.2d 1109, 1121 (D.Haw.

2003).  In order to state a claim under the Rehabilitation Act, plaintiff must allege: (1) that he is

1   a disabled person within the meaning of the Act, (2) he was able to perform the essential

2   functions of the job with or without reasonable accommodation, and (3) he suffered an adverse

3   employment action because of his disability.  Id.  (*citing* Bradley v. Harcourt, Brace & Co., 104

4   F.3d 267, 271 (9th Cir. 1996).  A disability is defined as: "(A) a physical or mental impairment

5   that substantially limits one or more of the major life activities of such individual, (B) a record of

6   such an impairment, or (C) being regarded as having such an impairment."  Walton v. U.S.

7   Marshals Service, 492 F.3d 998, 1005 (9th Cir. 2007) (citing the Americans with Disabilities

8   Act, 42 U.S.C. § 12102(2)).

9          The SAC alleges that plaintiff's disability is depression, and that it is military

10  service connected.  (SAC at ¶ 161.)  Plaintiff has not alleged, however that his depression

11  substantially limits a major life activity, that he has a record of it, or that he is regarded as having

12  such an impairment, as required by the statute.  See 42 U.S.C. § 12102(2).  Instead, the SAC

13  alleges: "[t]he interview panel did not inquire about the Plaintiff's service connected disability

14  and the Plaintiff believed the promise of ample administrative support and the eight hour work

15  day would allow him to maintain a healthy balance between his work and personal obligations."

16  (Id. at ¶ 170.)  This allegation contradicts a substantial limitation of a major life activity.  On

17  amendment, plaintiff must be able to allege a disability that meets the statutory definition.

18  Although for pleading purposes, plaintiff is not at this time required to show the nature and

19  severity of his impairment to prevail in this case, he will eventually need to show more than a

20  medical diagnosis, that his depression is "substantial."  See Niimi-Montalbo, 243 F.Supp.2d at

21  1122.

22         The SAC is also problematic in regard to the third factor of the analysis.  There is

23  no allegation that any adverse employment action was due to his disability.  In fact, as defendant

24  points out, plaintiff alleges under this claim that one of his supervisors retaliated against him for

25  "opposing unauthorized commitments" and for requesting that staff be directed to comply with

26  the law and ethical standards of conduct.  (SAC at ¶¶ 179, 190.)  Although plaintiff alleges that

the hostile work environment exacerbated his disability, he for the most part does not allege that he suffered discrimination, termination or demotions because of his disability.  (Id. at ¶ 189.) The fact that another employee transferred her duties to plaintiff which exacerbated his disability does not constitute retaliation or discrimination by defendant.  (Id. at ¶ 197.)   On the other hand, allegations such as the claim that plaintiff's request for administrative support was met with public humiliation by plaintiff's supervisor who sent an email broadcast to other managers describing the symptoms of plaintiff's disability do state a claim for discrimination based on his disability.  (Id. at ¶ 202.)

Plaintiff is further informed that he would have standing to bring a claim for retaliation under the Rehabilitation Act if he can validly claim that he opposed any act or practice made unlawful under this act.  Barker v. Riverside County Office of Educ., 584 F.3d 821, 825-26 (9th Cir. 2009).  In other words, it is not necessary that plaintiff be disabled in order to have standing, but he may advocate for the rights of others or oppose violations of the Rehabilitation Act directed to fellow employees.  See id. at 826.

Finally, defendant correctly notes that claims of due process violations in regard to the Rehabilitation Act claim are precluded because the Rehabilitation Act is the exclusive remedy for this type of discrimination.  See Boyd v. U.S. Postal Service, 752 F.2d 410, 413 (9th Cir. 1985).   Therefore, plaintiff will be permitted to amend this claim in accordance with the guidelines set forth herein.

5.  "Pattern and Practice of Retaliation for Participating and or Opposing Unlawful Discrimination, ADEA, Title VII, Rehabilitation Act" (Claim Four)

Plaintiff's opposition appears to eliminate discussion of Claim Four as a separate claim.  See Opp. at 1.  Defendant correctly argues that the allegations under this claim are disorganized, scattered, confusing, vague, ambiguous and conclusory.

In any event, this claim appears to contain a mishmash of factual allegations that pertain to any and all of plaintiff's separately enumerated claims, in addition to making new

1   allegations that do not state a claim.  An example of the latter defect is where plaintiff alleges

2   that two coworkers breached Title 5 U.S.C. § 2635.902(w) by either concealing, mutilating or

3   destroying a public record and did not inform plaintiff about "secret statements" so that plaintiff

4   was not able to refute them.  (SAC ¶ 215.)  Such allegations, to the extent they are decipherable,

5   constitute impermissible shotgun pleading.  "Shotgun pleadings are pleadings that overwhelm

6   defendants with an unclear mass of allegations and make it difficult or impossible for defendants

7   to make informed responses to the plaintiff's allegations."  See Sollberger v. Wachovia

8   Securities, LLC, 2010 WL 2674456, at *4 (C.D. Cal. Jun. 30, 2010); see also McHenry v. Renne,

9   84 F.3d 1172, 1179 (9th Cir. 1996) (holding that "[p]rolix, confusing complaints...impose unfair

10  burdens on litigants and judges.") This paragraph is an example of references to various statutes,

11  scattered throughout the complaint, that were allegedly violated; however, plaintiff has not pled

12  the elements of the asserted causes of action or factual allegations in support of those elements.

13          Furthermore, some of the allegations are merely examples of additional comments

14  or conversations which plaintiff previously cited in support of his other claims.  See e.g. SAC ¶

15  212 (citing coworker's assertion that plaintiff was not a team player).  The court construes Claim

16  Four as failing to allege a separate and distinct claim from the Title VII, ADEA, and

17  Rehabilitation Act claims.

18          Therefore on amendment, plaintiff shall eliminate Claim Four and include any

19  pertinent allegations regarding discrimination based on race, age, gender, and/or disability, to the

20  extent applicable, under the claims that pertain to those types of discrimination.

21          Finally, this claim points out that the sixty page SAC is entirely too long and

22  repetitive.  On amendment, plaintiff will be limited to **30 pages**.

23              6.  Civil Service Retention Rights (Claim Five)

24          The SAC alleges a violation of 5 U.S.C. § 8151, which is encompassed within the

25  Federal Employees Compensation Act ("FECA").  "FECA compensates federal employees for

26  certain lost wages and medical costs that are incurred as a result of "injury" sustained in the

1   performance of their duties. See 5 U.S.C. § 8102." <u>Nichols v. Frank</u>, 42 F.3d 503, 514 (9th Cir.

2   1994), *abrogation on other grounds recognized by* <u>Burrell v. Star Nursery, Inc.</u>, 170 F.3d 951,

3   955-56 (9th Cir.1999).  "In addition to providing certain compensatory benefits, FECA requires

4   federal employers to allow injured employees to return to their old positions or, if they can no

5   longer perform their original duties, to offer them reasonable alternative positions. <u>See</u> 5 U.S.C.

6   § 8151(b); 20 C.F.R. § 10.123(d)." <u>Meester v. Runyon</u>, 149 F.3d 855, 856 (8th Cir. 1998).

7   FECA provides that "[a] federal employee who has been separated from his position because of a

8   compensable injury enjoys certain rights to restoration to his prior position or an equivalent

9   position when he fully or partially recovers from the condition that had kept him from working."

10  <u>Johnson v. Merit Systems Protection Bd.</u>, 455 Fed. Appx. 984, 986, 2012 WL 10911, *1 (Jan. 4,

11  2012).

12          Defendant moves to dismiss this claim because there are no allegations of

13  workplace injuries or that plaintiff received workers' compensation benefits.  The SAC alleges

14  only in regard to this claim:  "the Agency denied the plaintiff's right to reinstatement after he

15  refused to conspire to commit felonies with people of color and for opposing preferential

16  treatment of people of color based on race and their sex." (SAC ¶ 323.)  Plaintiff misunderstands

17  the injuries that this Act is meant to redress.  In his opposition, plaintiff argues that defendant

18  retaliated against him after he requested accommodation and "oppos[ed] disability disparate

19  treatment." (Opp. at 54.)  Plaintiff does not assert that he suffered an injury in the performance

20  of his duties.  Plaintiff concedes that his disability was a military service connected disability and

21  it therefore could not have been sustained while he was working at the CNCS.  He does,

22  however, argue that his disability was exacerbated by his job.  (Opp. at 55:3.)  Plaintiff, though,

23  focuses on his request for accommodations for his alleged disability and defendant's refusal to

24  accommodate him which he claims exacerbated his disability.  (Opp. at 54.)

25          Nevertheless, the statute requires that plaintiff have received workers'

26  compensation benefits for his workplace injury.  As quoted by plaintiff in the SAC:

> (a) In the event the individual *resumes* employment with the
> Federal Government, the entire time during which the employee
> was receiving *compensation* under this chapter shall be credited to
> the employee for the purposes of within-grade step increases,
> retention purposes, and other rights and benefits based upon length
> of service.

5 U.S.C. § 8151 (emphasis added).  Plaintiff argues only that the "Department of Labor approved

the Plaintiff[']s claim for Major Depression Recurrent Episode, Unspecified, 29630 for the

periods of July 19, 2005 through August 3, 2005 and for March 27, 2006 through June 1, 2006."

(Opp. at 54.)  He does not plead or argue that he received workers' compensation benefits.

Furthermore, it does not appear that plaintiff resumed federal employment after any such

compensation.

> FECA's legislative history indicates congressional intent to protect
> injured Federal employees who are receiving OWCP [Office of
> Workers' Compensation Program] compensation under the Act,
> regardless of whether or where the injured employee worked while
> receiving that compensation. See S.Rep. No. 93–1081, reprinted in
> 1974 U.S.C.C.A.N. 5341, 5352 ("The amendment made by [§
> 8151] would assure injured employees who are able to return to
> work at some later date that, during their period of disability, they
> will incur no loss of benefits that they would have received were
> they not injured." (emphases added)); 120 Cong. Rec. 27,675
> (1974) ( "It is essential that injured or disabled employees of all
> covered departments and agencies ... be treated in a fair and
> equitable manner. The Federal Government should strive to attain
> the position of being a model employer.").

Gallo v. Department of Transp., 689 F.3d 1294, 1298-99 (C.A. Fed. 2012).  Plaintiff does not

allege that he received OWCP compensation under the FECA.

Plaintiff has presented no facts to support application of this Act to his case.

Therefore, the fifth claim will be dismissed without leave to amend.

CONCLUSION

For the reasons stated herein, IT IS ORDERED that:

1.  Plaintiff's motion to amend the amended complaint, filed June 22, 2012, (dkt.

no. 14), is granted.

21

2.  Defendant's motion to dismiss or for more definite statement, filed August 17, 2012, (dkt. no. 16), is granted.

3.  Plaintiff shall file and serve a third amended complaint that complies with the requirements of this order within 30 days of this order.  Failure to file a third amended complaint will result in a recommendation that this action be dismissed.

DATED: January 17, 2013

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:076/Grenier0258.mtd.wpd